IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JUAN CARLOS LOPEZ LOPEZ,<br><br>Movant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | NO. 4:14-cv-00400-REL-RAW<br><br>**REPORT AND RECOMMENDATION** |

Before the Court is Movant Juan Carlos Lopez Lopez's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. A federal inmate may file a motion under 28 U.S.C. § 2255 for release "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). This matter was referred to the undersigned for further Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Lopez challenges his conviction and sentence in United States v. Lopez Lopez, No. 4:09-cr-88-REL-CFB (S.D. Iowa) ("Criminal Case"), where he pleaded guilty to conspiracy to distribute methamphetamine. Id., J. 1, ECF No. 61. The undersigned takes judicial notice of the proceedings in that case. The sole claim raised in this action is that an attorney retained after Lopez was sentenced was ineffective for failing to file a direct appeal as directed by Lopez.

After reviewing the motion and response from the Government, District Court Judge Ronald Longstaff appointed counsel to represent Lopez. The matter was then referred to the undersigned for further proceedings, including an evidentiary hearing held March 23, 2015.

At the hearing, the undersigned heard testimony from Lopez (with the assistance of an interpreter) via telephone, and Benjamin Bergmann, the attorney retained by Lopez immediately following his criminal sentencing. Also at the hearing, the Government waived any challenge to the timeliness of the Section 2255 motion. See Evidentiary Hearing Transcript ("Tr.") 6, ECF No. 15. The undersigned has reviewed all filings by the parties and the relevant parts of the criminal docket. For the reasons that follow, the undersigned recommends that the Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 be denied.

## I. FACTUAL BACKGROUND

Angela Campbell and Michael Piper were originally appointed to represent Lopez. See Crim. Case, Notice of Appearance, ECF Nos. 15 and 17. They later withdrew, id., Order, ECF No. 35, and Gregory Racette was appointed on October 14, 2010, after the plea. See id., Appearance, ECF No. 36. Racette represented Lopez at his sentencing. Id., Minute Entry, ECF No. 59.

Sometime prior to the sentencing, Lopez met with Bergmann about possible representation. Tr. at 28. Lopez believed Bergmann was charging too much for his services and, therefore, did not retain Bergmann to represent him at the sentencing. Id.

Bergmann testified that in their pre-sentence meeting he explained to Lopez that the only way for him to obtain a sentence under the ten year minimum was to qualify for the safety valve, or cooperate with the government, by providing information in an interview. Tr. at 12. He recalled Lopez was unwilling to cooperate before sentencing, id., though there is reason to believe Lopez had

attempted to cooperate. In his testimony Lopez said that at some point (it is not clear when) he and Bergmann talked about the safety valve, "all that 35 stuff" and cooperating, but that is not what he needed Bergmann for because he had done "all of that." Id. at 34. He was apparently referring to two proffers he had made. These are mentioned in a pre-sentence memorandum attorney Racette filed. Racette wrote that Lopez should receive a substantial assistance reduction below the mandatory minimum because Lopez had made two proffers to the government. Crim. Case, Objection to Presentence Investigation Report 17, ECF No. 49; Tr. at 34.

On June 3, 2011, Judge Longstaff sentenced Lopez to ten years in prison, id., J. 2, ECF No. 61, and advised Lopez that the time for appeal was fourteen days. Tr. at 30. Lopez testified that he spoke with his wife[1] on the telephone, and they agreed she would come to Iowa to hire Bergmann to file the appeal. Id. at 31. According to Lopez, Bergmann came to the jail about two days after sentencing, and told Lopez that he would charge $5,000 to file an appeal. Id. at 30-31. Three days after the sentencing, Lopez's wife met with Bergman and paid a $5,000 retainer. Id. at 31; see also id. at 9 (testimony of Bergmann that they entered fee agreement although he referred to Lopez's wife as his sister or sister-in-law. Tr. at 15). Lopez's wife[2] and Bergmann signed a fee agreement on June 6, 2011. Movant's Exhibits at 3-9. The fee agreement is not specific as to the services Bergmann would perform, though it states in part, "[u]nless later agreed in writing, this representation does not

---

[1] Lopez's wife and daughter drowned in a river in Arkansas on June 17, 2011. Tr. at 31; see also Criminal Case, ECF No. 62 (Motion to Allow Defendant to Attend Wife and Child's Funeral).

[2] The Court took judicial notice of of all documents attached to Lopez's § 2255 motion and considered them offered and received for the purpose of the evidentiary hearing. Tr. at 40.

3

include representation on appeal." Movant's Exhibits in Support of Motion ("Movant's Exhibits"), ECF No. 1-2 at 3 and 6; see also Tr. at 14 (Bergmann acknowledging that written provision was likely stock language in all fee agreements).

When asked at the evidentiary hearing whether Lopez had requested any lawyer at any time to file an appeal on his behalf, Lopez responded that "my wife and I had hired him, the Benjamin lawyer, and so it was just him and no one else." Tr. at 36. When Lopez was asked on cross examination whether Bergmann told Lopez he would not file a direct appeal because there was nothing that could be done, Lopez answered, "[n]o. That's why my wife hired him, to do the direct appeal." Id. at 37.

Bergmann's testimony regarding these conversations differs from that given by Lopez. At the evidentiary hearing, Bergmann was adamant that he was not hired to file an appeal but instead to persuade the Government to file a motion to reduce sentence for substantial assistance pursuant to Federal Rule of Criminal Procedure 35. Id. at 13 ("I wouldn't have taken his money to do an appeal. He got a mandatory minimum sentence. There was nothing else he could have gotten."); id. at 15 (understood his role was to pursue reduction of sentence under Rule 35). Bergmann recalled discussing the case prior to his being retained, but also remembers telling Lopez that "I'm not going to do an appeal because you got the lowest sentence under the statute and there's nothing to appeal. We may have revisited that idea after he retained me, but he got the same answer." Id. at 17.

4

Bergmann visited Lopez at the jail the day after Lopez's wife died. Id. at 32. That was the last time that Lopez and Bergmann spoke with each other. Id. According to Lopez, Bergmann told him he would "do everything possible so that my sentence could be reduced." Id.

No direct appeal was ever filed by anyone, including Bergmann, Racette, or Lopez, pro se. On September 20, 2011, Bergmann belatedly filed an appearance on behalf of Lopez but never submitted any filings in district court. See Criminal Case, Notice of Attorney Appearance, ECF No. 64; Tr. at 16. More than a year after his sentencing, Lopez filed a pro se motion under Criminal Rule 35(b) to reduce his sentence based on substantial assistance to the government. Id., Motion, ECF No. 67 (November 5, 2012). Judge Pratt denied the motion on April 1, 2013. Id., Order, ECF No. 69.

Lopez, pro se, filed another Rule 35(b) motion on March 25, 2014. Id., Motion, ECF No. 70. Judge Pratt denied this motion as well. Id., Order, ECF No. 71 (May 23, 2014). Lopez filed a pro se notice of appeal with respect to this ruling on June 13, 2014. Id., ECF No. 73. He did not, however, also seek leave to appeal in forma pauperis. Before charging him the full filing fee, the Court of Appeals contacted Bergmann, who was listed as counsel of record, to advise Lopez about his right to appeal in forma pauperis. Tr. at 20, 22-23. In response, Bergmann filed a motion before the United States Court of Appeals for the Eighth Circuit to extend the deadline for Lopez to file an appropriate motion for leave to appeal in forma pauperis. See United States v. Lopez Lopez, No. 14-2467, Motion (filed July 10, 2014). The first substantive sentence of that motion reads, "[t]he undersigned has ***not*** been retained to represent Mr. Lopez on appeal." Id. at 1, ¶ 1 (emphasis added); see also Tr. at 23 (Bergmann agreed to contact Lopez about the in forma pauperis application "as

long as you're not going to have to make me write a brief for free that I've never been retained to do.").

Upon cross examination by the Government, Bergmann testified that before he takes a case from any client, "[t]hey need to have a real benefit for hiring me, and I wasn't going to take his money to do an appeal that was going to get essentially a summary dismissal because it was the absolute lowest sentence that Judge Longstaff could have gave him." Tr. at 25-26. Bergmann's recollection is that he made this clear to Lopez. Id. at 26.

Lopez later wrote letters to Bergmann asking about the status of his appeal. The first letter is dated September 23, 2011, three and a half months after the imposition of his sentence. See Movant's Exhibits at 11. The letter reminds Bergmann that Lopez's wife "hired your services to represent me on the direct appeal on the above reference. . . . [W]ould you kindly communicate to as to whether you have filed a timely notice of appeal. . . ." Id.

Lopez sent another letter dated January 5, 2012, again "inquiring on the status of my appeal and/or any legal issues (such as, motions, petitions, letters to the court, etc.), you are preparing or have prepared for me." Id. at 13. Bergmann testified at the evidentiary hearing that he did not have the letters from Lopez in his file, although he did not doubt their authenticity. Tr. at 25 (Bergmann did not recall the letters specifically "but don't hear me saying that I think they're fabricated or anything like that. I'm sure that I got them."). On January 23, 2012, Bergmann wrote to Lopez in English and Spanish (Bergmann is fluent in Spanish) asking Lopez to talk to his prison counselor about setting up a telephone conference so that they could discuss the situation. See Movant's Exhibits at 15. However, no telephone conference occurred. On January 30, 2012, Bergmann again wrote to Lopez, also in English and Spanish, stating he had been in touch with the U.S. Attorney's

6

office about a possible reduction in sentence and that he would "continue to do everything in my power to get your sentence reduced. . . ." Id. at 17.

It was Bergmann's position at the hearing that he never agreed to file an appeal on behalf of Lopez. He understood that Lopez may have believed that Bergmann was going to file an appeal but "I felt it was turning into a willful ignorance situation where you say it so many times and then it gets said back to you the opposite way." Id.

## II. DISCUSSION

Generally, in order to show that counsel failed to provide constitutionally effective assistance under the Sixth Amendment, a movant must show (1) counsel's representation was deficient, and (2) the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Hill v. Lockhart, 474 U.S. 52, 58-59 (1985) (Strickland applies to assistance of counsel in the context of a guilty plea).

The Supreme Court has held, however, that failure to file an appeal after being directed to do so by the client constitutes ineffective assistance of counsel without having to also demonstrate the usual prejudice of Strickland. Roe v. Flores-Ortega, 528 U.S. 470, 483 (2000). In such a case, "prejudice is presumed because the defendant has forfeited his right to an appellate proceeding as a result of his counsel's error. The court need not inquire whether the intended appeal would be meritorious or likely to succeed." Watson v. United States, 493 F.3d 960, 963-964 (8th Cir. 2007) (internal citations omitted).

For prejudice to be presumed, however, "the defendant must show that he manifestly 'instructed [his] counsel to file an appeal. . . . A bare assertion by the petitioner that [he] made a

request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition.'" Walking Eagle v. United States, 742 F.3d 1079, 1082 (8th Cir. 2014) (quoting Barger v. United States, 204 F.3d 1180, 1182 (8th Cir. 2000)). This case is different than most because Bergmann did not undertake representation until after Lopez was sentenced, and there is a question about what he was engaged to do, direct appeal or seek a post-sentencing reduction.

The undersigned first considers whether Lopez expressly instructed Bergmann to file an appeal. The record demonstrates that Lopez *believed* that Bergmann was going to file an appeal. For example, Lopez understood that Bergmann was going to represent him on appeal because when they met immediately after the sentencing, Bergmann stated "he would do it," and "that in order for him to present the direct appeal, he needed $5,000." Tr. at 31. This was the understanding Lopez had with his wife. See Tr. at 30 ("My wife and I spoke on the phone. And she decided to come here because she was in Arkansas and thought that she had to get a lawyer and that the best thing to do would be to hire Mr. Benjamin to do the appeal."); see also Tr. at 37 ("That's why my wife hired him, to do the direct appeal."). This was the impression he had from other conversations with Bergmann. See Tr. at 32 (immediately after wife and daughter died, Bergmann visited and said "he was going to do everything possible so that my sentence could be reduced.").

Despite the fact that Lopez believed Bergmann was going to file an appeal, Lopez never testified that he specifically instructed Bergmann to file a direct appeal. Bergmann does not dispute that the two of them discussed the possibility of an appeal both before and after sentencing. See Tr. at 17 ("we had discussions before he hired me about appealing"). He was adamant, however, that

8

he was "not going to do an appeal because you got the lowest sentence under the statute and there's nothing to appeal." Id. Instead, Bergmann stated he was hired for the specific task of persuading the Government to filed a substantial assistance motion pursuant to Federal Rule of Criminal Procedure 35(b). Tr. at 13.

The Court generally credits Bergmann's testimony about the limited purpose for which he agreed to represent Lopez and his attempts to make this clear to Lopez. The form fee agreement specifically excludes work on any appeals. Movant's Exhibits at 3 ("Unless later agreed in writing, this representation does not inculde representation on appeal."). In view of the context as Bergmann understood it, an appeal would have been fruitless and pursuit of a Rule 35 reduction in sentence held what limited promise there was for a sentence reduction. When Bergmann went to see Lopez after the death of Lopez's wife he, according to Lopez, said he would do everything possible to get his sentence reduced, and later expressed the same sentiment in his January 30, 2012 letter to Lopez. In fact, attempting to get the U.S. Attorney to agree to a Rule 35 reduction was all Bergmann attempted to do. All of this is most consistent with Bergmann's testimony about the limited purpose for which he agreed to represent Lopez.

On this record, the undersigned finds that Lopez never gave an express instruction for Bergmann to file an appeal, and Bergmann agreed to represent Lopez only for the purpose of seeking a post-sentencing reduction in sentence and not for pursuing a direct appeal.

Even when a defendant does not expressly instruct an attorney to file an appeal, however, an attorney 'has a constitutionally imposed duty to consult with the defendant about an appeal' if there is reason to think 'that a rational defendant would want to appeal' or the 'particular defendant

reasonably demonstrated to counsel that he was interested in appealing.'  Flores-Ortega, 528 U.S. at 480.  The next consideration is whether, given the circumstances here, Bergmann had a duty to consult with Lopez about an appeal.

Factors that are "relevant in determining 'whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal'" include whether the defendant pleaded guilty, whether he received the sentence bargained for, and whether he waived his appeal rights.  Parsons v. United States, 505 F.3d 797, 799-800 (8th Cir. 2007) (internal quotations omitted).  These factors do not favor Lopez in this case.  Lopez pleaded guilty and received the sentence contemplated in the plea agreement.  See Criminal Case, Plea Agreement, ECF No. 26 at 2, ¶ 5 (noting minimum mandatory term of ten years).  The plea agreement did not waive Lopez's appeal rights but did waive his rights to pursue postconviction review of his conviction or sentence absent ineffective assistance of counsel or prosecutorial misconduct. Finally, it is clear Bergmann did not believe a rational defendant in Lopez's place would want to appeal.

Nonetheless, the record does reflect that Bergmann did consult with Lopez about an appeal. Bergmann's testimony was that he repeatedly responded there were no appealable issues.  Id. ("we had discussions before he hired me about him appealing, and I told him the same thing I said today is that I'm not going to do an appeal because you got the lowest sentence under the statute and there's nothing to appeal."). Bergmann testified that rather than filing an appeal, he would instead work to secure a Rule 35 motion.  Tr. at 23-24 (met with Lopez after sentencing explaining that appeal had no merit but he would ask the Government to file a motion under Rule 35).

Upon this record, the undersigned finds that Lopez has failed to show by a preponderance of the evidence that he specifically and directly instructed Bergmann to file an appeal or that he agreed to represent Lopez for the purpose of an appeal. Further, insofar as Bergmann was under any obligation to consult with Lopez about an appeal, he satisfactorily met that obligation in his meetings with Lopez. As such, Lopez has failed to demonstrate that Bergmann failed to provide constitutionally effective assistance of counsel. Flores-Ortega, 528 U.S. at 483.

### III. RECOMMENDATION AND ORDER

For the reasons stated above, the undersigned RESPECTFULLY RECOMMENDS that the Motion to Vacate, Set Aside, or Correct Movant's Sentence pursuant to 28 U.S.C. § 2255 be denied and the case be dismissed.

IT IS ORDERED that the parties have until **July 13, 2015,** to file written objections to the Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1). Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990); Wade for Robinson v. Callahan, 976 F. Supp. 1269, 1276 (E.D. Mo. 1997). Any objections filed must identify the specific portions of the Report and Recommendation and relevant portions of the record to which the objections are made and must set forth the basis for such objections. See Fed. R. Civ. P. 72; Thompson, 897 F.2d at 357. Failure to timely file objections may constitute a waiver of a party's right to appeal questions of fact. Thomas v. Arn, 474 U.S. 140, 155 (1985); Griffini v. Mitchell, 31 F.3d 690, 692 (8th Cir. 1994); Halpin v. Shalala, 999 F.2d 342, 345 & n.1, 346 (8th Cir. 1993); Thompson, 897 F.2d at 357.

IT IS SO ORDERED.

Dated this 19th day of June, 2015.

_____
ROSS A. WALTERS
UNITED STATES MAGISTRATE JUDGE